**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **JOSHUA LIBBY, individually,** | ) | |
| **and on behalf of all others similarly situated,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Case No. 11-12150** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **CARRIER IQ, INC., HTC, INC., and HTC** | ) | |
| **AMERICA, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

## COMPLAINT

---

COMES NOW Plaintiff, individually, and on behalf of all others similarly situated, by and through their undersigned counsel, on information and belief, and for their Complaint against Defendants Carrier IQ, Inc., HTC, Inc. and HTC America, Inc. state as follows:

1.     Defendants have unlawfully intercepted private electronic communications emanating from private mobile phones, handsets and smart phones.  This practice violates Federal Law.

### PARTIES, JURISDICTION AND VENUE

2.     Joshua Libby is a natural person and citizen and resident of 7 Bacon Road, Woburn Massachusetts.

3.     All references to "Plaintiff(s)" throughout this Complaint are made on behalf of the named Plaintiff(s) and the proposed plaintiff class(es), and vice versa.

4.     The amount in controversy in this action, as defined by 28 U.S.C. § 1332(d)(6), exceeds $5,000,000 exclusive of costs and interest.

5.     Defendant, Carrier IQ, Inc. (hereinafter referred to as "CIQ") is a citizen of California as defined by 28 U.S.C. § 1332(c) with its principal place of business in California.

6.     Defendants HTC, Inc. and HTC America (collectively referred to as "HTC") are citizens of Washington, with their principle place of business in Bellevue, Washington.

7.     Defendants are residents of the District of Massachusetts as they have ongoing and systematic contacts with residents of the District of Massachusetts. Defendants have, at all material times, conducted business in the District of Massachusetts.  Moreover, Defendants have sufficient minimum contacts with the Commonwealth of Massachusetts such that the assumption of jurisdiction will not offend traditional notation of fair play and substantial justice.

8.     When reference in this Complaint is made to any act or omission of Defendants, it should be deemed to mean that the officers, directors, agents, employees, or representatives of Defendants committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation, or control of the affairs of Defendants, and did so while acting within the scope of their employment or agency.

## STATEMENT OF FACTS

9.      Defendant, CIQ is the leading provider of mobile services intelligence solutions to the wireless industry.

10.     Defendant, CIQ claims on their website "As the only embedded analytics company to support millions of devices simultaneously, we give wireless carriers and handset manufacturers unprecedented insight into their customers mobile experience."

11.     Defendant, CIQ uses software in mobile phones to measure performance and user experience with no visible notice or impact to the user.

12.     Defendant, CIQ's data processing center collects the data for near real-time monitoring and intelligence.

13.     Defendant, CIQ is the only company in the industry embedding diagnostic software in millions of mobile phones, having done so in over 130 million phones globally.

14.     Defendant CIQ states on their website "Identify exactly how your customers interact with services and which ones they use.  See which content they consume, EVEN OFFLINE " (caps added).

15.     They further state on their website that their software answers business critical questions including "How do users respond to mobile advertising".

16.     Their website further states that their software features include "View application and device feature usage, such as camera, music, messaging, browser and TV".

17.     Defendant CIQ further states that their services give "uniquely powerful insight into mobile service quality and USER BEHAVIOR"(caps added), allowing the customer to "identify new business opportunities".

18.     Defendant further states that their software "uses data directly from the mobile phone itself to give a precise view of how users interact with both their phones and the services delivered through them, EVEN IF THE PHONE IS NOT COMMUNICATING WITH THE NETWORK….   Identify exactly how your customers interact with services and which ones they use.   SEE WHICH CONTENT THEY CONSUME, EVEN OFFLINE" (caps added).

19.     Privacy concerns surrounding Carrier IQ initially arose after Trevor Eckhart, a security researcher, posted a video which seemingly demonstrated Carrier IQ's keystroke logging, even offline.

20.     Carrier IQ's patent application #20110106942 contains claims regarding the collection of keystroke data, describing their product as a "method of collecting data…wherein the data relates to an end user's interaction with the device…wherein the interaction with the device comprises the end user's pressing of keys on the device".

21.     A CIQ representative has been quoted in response to the privacy concerns as follows:

Andrew Coward-Chief marketing officer

"We're as surprised as anybody to see all that information flowing.  It raises a lot of questions for the industry-and not (only) for Carrier IQ".    CARRIER IQ: WE'RE AS SURPRISED AS YOU.  CNNMoney.com 12/02/11

"We do recognize the power and value of this data.  We're very aware that this information is sensitive.  It's a treasure trove….We're seeing URLS and we can capture that information".     CARRIER IQ ADMITS HOLDING TREASURE TROVE OF CONSUMER DATA, BUT NOT KEYSTROKES:   Wired.com 12/02/2011

In an interview with Wired.com said "probably yes" when asked whether Carrier IQ could read mobile users' text messages.   CRITICS LINE UP TO BASH MAKER OF SECRET PHONE-MONITORING SOFTWARE:   Wired.com 12/01/11

22.    Defendant, CIQ captures and records every keystroke entered on the mobile device, as well as location and other data.

23.    Defendant, HTC produces mobile phones and handsets, including "Android" smart phones.

24.    The CIQ software is embedded in HTC Android phones.

25.    The information collected by CIQ is transmitted to various service providers, including Sprint, AT&T and T-Mobile.

26.    Plaintiff, Joshua Libby owns an HTC Android phone using the T-MOBILE network.  At all relevant times Plaintiff's cell phone was used to electronically send over plaintiff's cell phone network various types of private data.  This data was not readily accessible to the general public.   Plaintiff did not know that Defendants were surreptitiously monitoring and collecting this data, nor did Plaintiff give them permission to do so.

27.    Defendants intercepted, recorded and collected information concerning the substance, purport, or meaning of the electronic communications transmitted without the authorization of the parties to those communications.

28.     During all times relevant herein, Plaintiff used and maintained a cellular phone on the T-MOBILE wireless network.

29.     Plaintiff and Class Members, as defined below, were unaware of Defendant's wrongful conduct, and unable to discover it until December 2011, as Defendants conduct by nature was secret and concealed.

## CLASS ACTION ALLEGATIONS

30.     This action is brought as a class action by Plaintiffs on behalf of themselves and on behalf of all those similarly situated pursuant to Rule 23(a) and 23(b)(1), (2), and (3) of the Federal Rules of Civil Procedure.  The proposed class is defined as follows:

> All United States residents who operate a cellular phone device manufactured by HTC, Inc. and/or HTC America, Inc. and from which Carrier IQ, Inc. collected electronic communications. (the "Class" or "Class Members").

> Specifically excluded from the class are: any Judge conducting proceedings in this action and their parents, spouses and children as well as any other member of their family residing in the judge's household; counsel of record in this action; the legal representatives, heirs, successors and assigns of any excluded person.

31.     The exact number of the members of the class (or sub-classes) is not presently known, but is so numerous that joinder of individual members in this action is impracticable.  The exact number of the members of the class (or sub-classes) can only be ascertained through discovery, because such information is in the exclusive control of Defendant.  However, based on the nature of the activities alleged herein, Plaintiffs believe that the members of the class (or sub-classes) number the millions and are geographically dispersed throughout the United States.  The addresses of the members of

the class (or sub-classes) are readily obtainable from the Defendants and their agents and on information and belief are maintained in the computer database of Defendants and are easily retrievable.

32.     Plaintiffs will fairly and adequately protect the interests of the class (or sub-classes) and have retained counsel that are experienced and capable in class action litigation.  Plaintiffs understand and appreciate their duties to the class (or sub-classes) under Fed. R. Civ. P. 23 and are committed to vigorously protecting the rights of absent members of the class (or sub-classes).

33.     Plaintiffs are asserting claims that are typical of the claims of each member of the class (or sub-classes) they seek to represent, in that the claims of all members of the class (or sub-classes), including Plaintiffs, depend upon a showing that the Defendants violated federal law.  All claims alleged on behalf of the class (or sub-classes) flow from this conduct as well.  Further, there is no conflict between any Plaintiff and other members of the class (or sub-classes) with respect to this action.

34.     There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented.  Questions of law and fact arising out of Defendants' conduct are common to all members of the class (or sub-classes), and such common issues of law and act predominate over any questions affecting only individual members of the class (or sub-classes).

35.     Common issues of law and fact include, but are not limited to, the following:

      a.     Whether the data collected from Plaintiffs' cellular phone devices are electronic communications protected by the Federal Wiretap Act.;

      b.     Whether Defendants' interception of data collected from Plaintiffs' devices was intentional within the meaning of the Federal Wiretap Act;

      c.     The proper measure of damages under the Federal Wiretap Act;

36.     The relief sought is common to the entirety of the class (or sub-classes).

37.     Defendants have acted on grounds generally applicable to the class (or sub-classes), thereby making final injunctive relief or corresponding injunctive relief appropriate with respect to the class (or sub-classes) as a whole.

38.     This action is properly maintained as a class action in that the prosecution of separate actions by individual members would create a risk of adjudication with respect to individual members which would establish incompatible standards of conduct for the Defendants.

39.     This action is properly maintained as a class action in that the prosecution of separate actions by individual members of the class (or sub-classes) would create a risk of adjudications with respect to individual members of each class (or sub-classes) which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudication, or would substantially impair or impede their ability to protect their interests.

40.     A class action is superior to other available methods for the fair and efficient adjudication of the claims asserted herein given that, among other things:

    (i)     significant economies of time, effort, and expense will inure to the benefit of the Court and the parties in litigating the common issues on a class-wide instead of a repetitive individual basis.

    (ii)    the size of the individual damage claims of most members of the class (or sub-classes) is too small to make individual litigation an economically viable alternative, such that few members of the class (or sub-classes) have any interest in individually controlling the prosecution of a separate action;

    (iii)   without the representation provided by Plaintiffs herein, few, if any, members of the class (or sub-classes) will receive legal representation or redress for their injuries;

    (iv)   class treatment is required for optimal deterrence;

    (v)    despite the relatively small size of the claims of many individual members of the class (or sub-classes), their aggregate volume coupled with the economies of scale inherent in litigating similar claims on a common basis, will enable this case to be litigated as a class action on a cost effective basis, especially when compared with respective individual litigation;

    (vi)   no unusual difficulties are likely to be encountered in the management of this class action;

    (vii)  plaintiffs and members of the class (or sub-classes) have all suffered irreparable harm and damages as a result of Defendants' unlawful and wrongful conduct;

41.    Concentrating this litigation in one forum would aid judicial economy and efficiency, promote parity among the claims of the individual members of the class (or sub-classes), and result in judicial consistency.

## COUNT I

42.    Plaintiffs incorporate the allegations contained in Paragraphs 1 through 33 as if fully set out herein.

43.     The Omnibus Crime Control and Safe Streets Act of 1968, also known as

the Federal Wiretap Act, 18 U.S.C. § 2510 et seq., provides:

> [A]ny person who-- … intentionally intercepts, endeavors to
> intercept, … any wire, oral, or electronic communication; …
> shall be punished as provided in subsection (4) or shall be
> subject to suit as provided in subsection (5).

18 U.S.C.A. § 2511.

44.     At all times relevant hereto, Plaintiffs, and Class Members were persons

entitled to the protection of 18 U.S.C. § 2511 as they were individuals who were party to

electronic communications.

45.     On information and belief, Defendants intercepted information concerning

the substance, purport, or meaning of Plaintiffs' electronic communications on more than

one occasion.

46.     The Federal Wiretap Act also provides that:

> [A]ny person whose wire, oral, or electronic communication
> is intercepted, disclosed, or intentionally used in violation of
> this chapter may in a civil action recover from the person or
> entity … which engaged in that violation such relief as may
> be appropriate.
>
> In an action under this section, appropriate relief includes --
> … (2) damages under subsection (c) and punitive damages in
> appropriate cases; and (3) a reasonable attorney's fee and
> other litigation costs reasonably incurred … [T]he court may
> assess as damages whichever is the greater of – (A) the sum
> of the actual damages suffered by the plaintiff and any profits
> made by the violator as a result of the violation; or (B)
> statutory damages of whichever is the greater of $100 a day
> for each violation or $10,000.

18 U.S.C. § 2520

WHEREFORE, Plaintiffs and the Class pray that the Court enter judgment in their favor and against Defendants as follows:

a.   Ordering that this action be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, and

b.   Declaring that Defendant's collection of electronic communications violates 18 U.S.C. §2511; and

c.   Awarding Plaintiffs and Class Members statutory damages pursuant to 18 U.S.C. § 2520, including punitive damages, costs of suit, and attorneys' fees; and

d.   Injunctive and declaratory relief as deemed appropriate.

Respectfully submitted

*/s/ Gary Klein*
RODDY KLEIN & RYAN
Gary Klein (BBO # 560769)
Shennan Kavanagh (BBO # 655174)
Kevin Costello (BBO # 669100)
727 Atlantic Avenue
Boston, MA   02111-2810
Telephone:  (617) 357-5500 ext. 15
Facsimile:   (617) 357-5030
Email: klein@roddykleinryan.com
          kavanagh@roddykleinrya.com
          costello@roddykleinrya.com

HOLLAND, GROVES, SCHNELLER
& STOLZE, LLC
Eric D. Holland, #6207110
Steven J. Stolze, #6203254
Steven L. Groves, #6211737
300 N Tucker, Suite 801
St. Louis, Missouri 63101
Telephone: 314.241.8111
Facsimile: 314.241.5554
Email: eholland@allfela.com
          stevenstolze@sbcglobal.net
          sgroves@allfela.com

11

BOLEN, ROBINSON & ELLIS, LLP
Jon D. Robinson
Christopher M. Ellis
Shane M. Mendenhall
202 South Franklin Street, 2nd Floor
Decatur, Illinois 62523
Telephone: 217.429.4296
Facsimile: 217.329.0034
Email: jrobinson@brelaw.com
        cellis@brelaw.com
        smendenhall@brelaw.com


LEVIN, FISHBEIN, SEDRAN & BREMAN
Charles Schaffer
510 Walnut Street, Suite 500
Philadelphia, PA 19106-3697
Telephone: (215)592-1500
Facsimile: (215) 592-4663
Email: cschaffer@lfsblaw.com